**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>BENJAMIN C. STINSON and<br>ADRIENNE L. STINSON,<br><br>　　　　　　　　Debtors<br><br>USALLIANCE FEDERAL CREDIT<br>UNION,<br><br>　　　　　　　　Plaintiff<br><br>v.<br><br>BENJAMIN C. STINSON and<br>ADRIENNE L. STINSON,<br><br>　　　　　　　　Defendants | Chapter 7<br>Case No. 09-12697-FJB<br><br><br><br><br>Adversary Proceeding<br>No. 09-1217<br><br>[NOT FOR PUBLICATION] |

**MEMORANDUM OF DECISION**

By its complaint in this adversary proceeding, the plaintiff, USAlliance Federal Credit Union ("USAlliance" or "the plaintiff"), seeks a determination that all or some portion of the balance due on a loan it made to the defendants and chapter 7 debtors, Benjamin C. Stinson and Adrienne L. Stinson ("the Debtors"), is excepted from discharge as a debt for fraudulent misrepresentations under 11 U.S.C. § 523(a)(2)(A) and (B) and larceny under § 523(a)(4).[1] The complaint arises out of a refinancing transaction whereby USAlliance advanced $900,000 to the Debtors, mostly to refinance debt incurred in constructing a new home. The construction project was already in financial trouble by the time USAlliance came on the scene. The complaint pleads only three sets of operative facts, but USAlliance developed five at trial without moving to amend the complaint. The matter having been tried, the Court now enters the following findings of fact and conclusions of law. USAlliance bears the burden of proving

---
[1] The complaint also included demands for denial of discharge that were earlier dismissed.

the requirements of § 523(a)(2) and (a)(4) by a preponderance of the evidence and has not sustained its burden as to any count.

### a.   The Credit Accounts

In the first set of operative facts, the Debtors are alleged to have promised in their loan commitment letter to "payoff at closing and close the following accounts: AMEX, Citi, Chase (4 loans), Digital FCU and Bank of America." USAlliance contends that the Debtors made the promise to close these accounts without intent to close the accounts, a false promise, and that in violation of this promise, they later incurred new credit on the accounts. USAlliance contends that, on the basis of this false promise, it advanced loan proceeds of $107,099.52 to pay off four of the accounts in question.

The evidence established that the Debtors did, by signing the commitment letter, promise to pay and close these accounts, that they made this promise with intent to honor it, and that they did pay off the accounts from the proceeds of the loans and in each instance sent a letter to the account creditor instructing that the account be closed. The Debtors later needed additional credit, applied for new credit from the account creditors whose debts had been paid, and were granted the new credit, in some instances through the previously closed accounts. The Debtors had made no promise not to incur further credit card debt—USAlliance does not contend that any such promise was part of their loan agreement. In fact, the obligation to close the accounts was one the Debtors were obligated to complete at the closing as a condition of the closing. It was not an obligation that USAlliance was trusting the Debtors to complete *after* the closing; and, in fact, the Debtors fulfilled their obligation to close the accounts at the closing, by signing and sending account-closing letters at the closing itself. I therefore conclude that USAlliance did not rely on the promise to close the accounts as a condition of extending credit; USAlliance itself verified the issuance of closing letters as a condition of making the loan. Also, where USAlliance did not obtain a promise not to incur further debt on new credit card

2

accounts, I find that it could not have and did not, in making the loan to the Debtors, rely on any promise not to incur new credit card debt.

USAlliance contends that the alleged false promise renders the debt nondischargeable under § 523(a)(2)(A) and under § 523(a)(4).  In order to except a debt from discharge under § 523(a)(2)(A), a creditor must show, among other things, that the debtor made a false representation, that the debtor made the representation with intent to deceive and induce reliance, and that the creditor relied upon the false representation.  *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997).  In this instance the false statement was an alleged false promise, a promise made without intent to honor it.  Having found that the Debtors made their promise with intent to honor it, the court finds their promise was neither false nor made with intent to deceive.  The Court further finds that USAlliance did not, in making the loan, rely on the Debtors' promise to close the accounts.  These facts therefore do not support an exception from discharge under § 523(a)(2)(A).

      **b.**      **Representations as to Occupancy Permit**

In the complaint, USAlliance alleges that it advanced loan proceeds to the Debtors in reliance on a false representation by the Debtors that they had applied for an occupancy permit for the property whose refinancing and completion the loan was intended to fund, and that in fact the Debtors had never applied for or received an occupancy permit.[2]  At trial, this count morphed and evolved.  The evidence showed that, during the loan application process but before the closing, Debtor Benjamin Stinson, believing that an occupancy permit had been issued, initially, by email, represented to a Charles Vickery, a loan officer for USAlliance, that he and his wife had a temporary occupancy permit:

> My contractor met with the Building Inspector on Friday and we
> currently have a temporary C/O [certificate of occupancy].  The
> outstanding items (cabinetry, floors, etc).  Should take no longer than a
> couple of weeks to finish up.  [sic]

---

[2] The complaint does not allege that the Debtors ever represented that they had obtained an occupancy permit.

Hours later, he learned that he was mistaken, no permit having been issued, and he immediately notified Vickery by email of the mistake:

> I just spoke with my contractor and he informed me that the building inspector was not able to issue the temporary C/O yesterday since we haven't installed the kitchen (cabinets, etc) yet. This is news to me of course, as that was the purpose of their meeting yesterday. Is that going to be a problem?

Three days later, Vickery responded by email, which in its entirety said: "You can still close since the remaining work includes installation of the cabinets."

On the basis of this uncontroverted evidence, USAlliance essentially stopped contending that the Debtors misrepresented to them that they had applied for or received an occupancy permit. Instead, at trial, USAlliance asserted for the first time that the Debtors made a misrepresentation that renders the loan obligation nondischargeable under § 523(a)(2)(A) when they indicated to Vickery that the remaining work—the work remaining to be done before an occupancy permit could be issued—should take no more than two weeks to complete. Here, USAlliance is relying on the representation in the first email cited above—"the outstanding items (cabinetry, floors, etc.) should take no longer than a couple of weeks to finish up"—and on Debtors' failure to inform USAlliance of the scale of the work remaining to be done before an occupancy permit could issue, a fraudulent omission. Notably, the Debtors had not informed USAlliance that the property still required installation of a septic system.

The Court rejects this new theory for the following reasons. First, it is based on an allegation of fraud of which the Debtors were afforded no notice prior to trial. Fraud must be pleaded with particularity in order to afford defendants an opportunity to know what they must defend against. The Debtors were in this instance afforded no such notice. Second, only Benjamin Stinson was the maker of the representation regarding estimated time for completion, and only he might be deemed to have omitted relevant information; there is no evidence that Adrienne Stinson was party to the communications in issue, and therefore this count is unavailing against her. Third, the representation in

4

question was an estimate as to future events and can only have been false if it was not in fact the maker's true estimate; the fact that the estimate did not prove to be accurate does not make it a false representation.  Fourth, USAlliance has wholly failed to establish that Benjamin Stinson's statement was not his true and honest estimate and belief or that he made it with intent to deceive; nor has it established that Benjamin knowingly omitted mention of the septic system issue, much less with intent to deceive, or that Benjamin was aware that USAlliance was looking to him for an accurate estimate of the remaining time, work, and expenditures needed to obtain an occupancy permit.  Fifth, USAlliance has not proven that it relied on Benjamin's estimate when it made the loan and advanced funds: Vickery's response was not "you can still close because you'll have a C/O within two weeks" but "you can still close since the remaining work includes installation of the cabinets."  Vickery certainly had no basis for concluding that Benjamin Stinson had expertise in estimating how soon an occupancy permit might be issued; in fact, by virtue of Benjamin's second email—the one indicating that he had been mistaken in the first about the issuance of an occupancy permit—it had evidence that (i) he was not privy to the details and (ii) he perhaps did not fully understand the matter of occupancy permitting. Rather, the evidence suggests that USAlliance was eager to make this loan and was willing to cut corners to make it work.  It took a knowing and calculated risk in proceeding without an occupancy permit.  For these reasons, USAlliance cannot prevail on the basis of any false statement or omission regarding occupancy permitting.

    c.    **Intent to Use Funds for Construction**

In the complaint, USAlliance alleges that, as part of the "mortgage loan process" (by which I understand it to mean the loan approval process) the defendants represented that the loan proceeds would be used to complete construction of the subject property, but the property was never completed; the complaint does not indicate where, when, or how this representation was made.  The complaint

implies, but does not plainly state, as it should, that (i) the Debtors used the funds for other purposes, not for completion of the house, (ii) the Debtors made the representation in question, a promise, without intent to honor it, and (iii) the Debtors made this false promise with intent to deceive and to induce reliance.

For the following reasons, the Court finds no basis for relief under § 523(a)(2)(A) in this count. First, the complaint itself fails to (i) identify with specificity the representation at issue, (ii) allege that it was false, and (iii) allege that that it was made with intent to deceive.  In short, the complaint does not adequately put a particular allegation of fraud into controversy or plead a basis for nondischargeability under § 523(a)(2)(A).  Nor were the Debtors given adequate notice of the alleged fraud against which they would be required to defend.

Second, USAlliance still has not shown or indicated where, when, and how (i.e., in what words) the Debtors made the alleged representation that is the subject of this count.  If evidence of this representation is in the trial record, it remains well hidden; it is not the burden of the court to seek a needle in a haystack.  In any event, no such representation is apparent in the most likely places:  the letter of intent and the promissory note.  Moreover, the agreement plainly contemplated that proceeds of the loan would, to a large extent, be used for purposes other than completion of construction:  by disbursements at the loan closing, USAlliance itself disbursed some $730,000 (of total loan proceeds of $900,000) to pay off an existing mortgage on the property and another $107,098.74 to pay off existing credit card debt.  The evidence further shows that by a letter of understanding, another $27,500 was escrowed or held back for completion of certain work on the property, and that upon completion of that work, USAlliance would disburse further funds (the amount is unspecified) to pay off other credit card debt.  If some portion of the loan proceeds was required to be expended on improvement of the property (over and above the $27,500 that was being held back until certain work was completed, and which therefore can't form the basis of this count), it was precious little.  In any event, the Court cannot

find that the Debtors represented that any definite portion of the loan proceeds would be expended on improvement of the property.

Although there are other failures of proof on this count, the court need go no further. USAlliance is entitled to no relief from an alleged misrepresentation to use loan proceeds for construction.

### d.     Misrepresentations of Financial Condition in Letter to Joan Darack

At trial, USAlliance argued that it was entitled to relief under § 523(a)(2)(A) or (B) for an additional alleged misrepresentation by debtor Benjamin Stinson in a letter he wrote to a mortgage broker, Joan Darack, when enlisting her help to help find the financing the Debtors ultimately obtained from USAlliance.  The letter was neither addressed to USAlliance nor sent to it by the Debtors.  It made its way into USAlliance's file, but no one could indicate precisely how or when.[3]  In the letter, Benjamin discussed the project of building the home that is the subject of the USAlliance mortgage loan, and he detailed cost overruns on the project of some $310,000, saying he paid $200,000 of these by use of unsecured lines of credit.  He continues:

> I had always viewed this as a temporary fix for an immediate problem, and intended to roll up this debt as part of my permanent financing upon completion of the house. . . .  In any event, walking around with a wallet full of credit cards in not the way I prefer to live.

Near the end, he adds that "[t]he struggles are all in the past now.  The fight has been won, the bills have been paid. . . .  All that remains is to finalize things and put my financing on an even keel."  He ends:  "I appreciate your help in navigating the mortgage market."  USAlliance contends that the representation in this letter that "the bills have been paid" was a material misrepresentation, published with intent to deceive, on which it relied in extending credit.

---

[3] The loan officer from USAlliance that handled this loan is no longer employed by USAlliance, and he did not appear at trial, either in person or via deposition.

The Court rejects this new count for the following reasons.  First, it is based on an allegation of fraud of which the Debtors were afforded no notice prior to trial.  Fraud must be pleaded with particularity in order to afford defendants an opportunity to know what they must defend against.  The Debtors were in this instance afforded no such notice.  Second, only Benjamin Stinson was the maker of the representation; there is no evidence against Adrienne Stinson, and therefore this count is unavailing against her.  Third, USAlliance has adduced no evidence that it relied on the representation in making its decision to lend; it could not even explain the presence of the letter in its file.  Fourth, the letter, when read as a whole, cannot be construed to mean that all the Debtors' debts have been paid; clearly they still had at least a mortgage and some $200,000 in unsecured debt on lines of credit, a fact well known to USAlliance.  Fifth, USAlliance has failed to prove that when the letter was written, the Debtors had debt other than on the lines of credit.  The fact that they had other debt when they filed their bankruptcy petition can be explained by the fact that work continued after the letter was written and after the loan was made.  Sixth, the evidence does not preponderate in favor of a finding that the statement in question was written with intent to deceive.  Each of these reasons is sufficient to defeat a claim under either § 523(a)(2)(A) or § 523(a)(2)(B).  The claim under (a)(2)(B) fails for the further reason that the letter, though in writing, is not "respecting the debtor's financial condition," language which has been construed to require a financial statement akin to a balance sheet or income statement.  The letter is not of this nature.

    e.    **Loan Application**

At trial, USAlliance argued for the first time that it was entitled to relief under § 523(a)(2)(B) for an additional misrepresentation:  the Debtors allegedly omitted debts they owed from a portion of the USAlliance loan application that required that they list all their debts.  USAlliance contends that the

omitted debts are debts that the debtors listed on their bankruptcy schedules that were not also listed on the loan application.

The Court rejects this count for the following reasons. First, it is based on an allegation of fraud of which the Debtors were afforded no notice prior to trial. Second, USAlliance has failed to prove that when the application was completed, the Debtors had debt other than the substantial debt they listed on the application. The fact that they had other debt when they filed their bankruptcy petition on March 31, 2009, can be explained by the fact that work continued after the application was completed but before the bankruptcy filing. Third, the evidence does not preponderate in favor of a finding that inaccuracies in the loan application, if any, were made with intent to deceive. Each of these reasons suffices to defeat a claim under § 523(a)(2)(B).

      **f.**      **Larceny**

USAlliance also contends that the facts that form the basis of the five counts discussed above warrant a determination that its debt is excepted from discharge as a debt for larceny under § 523(a)(4). USAlliance has failed to explain how the above facts can establish larceny. "Larceny," which for purposes of § 523(a)(4) is defined by federal law, "is the (1) wrongful taking of (2) property (3) of another (4) without the owner's consent (5) with intent to convert the property." *Hancock v. Caliri (In re Caliri)*, 335 B.R. 2, 12 (Bankr. D. Mass 2005). USAlliance voluntarily advanced the loan proceeds to the Debtors—this is uncontroverted. Therefore, there can have been no larceny here.

USAlliance is perhaps relying on the species of larceny in which property is obtained by fraud, trick, or deception. *Black's Law Dictionary* 881-82 (6th ed. 1990) ("*Larceny by fraud or deception*. A person is guilty of theft if he purposely obtains property of another by deception."). At least where it does not involve a taking without the owner's consent, larceny of this nature is not larceny within the meaning of § 523(a)(4). In any event, where the court has found that USAlliance has not proven either

9

that the Debtors falsely represented their intent and or that they acted with intent to deceive, USAlliance cannot even show larceny by fraud.

### g. Conclusion

For the reasons set forth above, USAlliance has failed to establish a basis for excepting any part of its debt from discharge. Judgment will enter accordingly upon disposition of the recently filed motion of debtors' counsel for compensation under 11 U.S.C. § 523(d).

Date:  February 2, 2012

Frank J. Bailey
United States Bankruptcy Judge